Richard A. WHALEN, Appellant,

v.

The ROANOKE COUNTY BOARD OF SUPERVISORS; William F. Clark, Individually; Raymond Eugene Robertson, Individually; Appellees.

No. 83–2095.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 4, 1984.

Decided Aug. 8, 1985.

S. Strother Smith, III, Abingdon, Va., for appellant.

William B. Poff, Thomas A. Leggette, Roanoke, Va. (Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., on brief) for appellees.

Before WINTER, Chief Judge, ERVIN, Circuit Judge, and BUTZNER, Senior Circuit Judge.

BUTZNER, Senior Circuit Judge:

Richard A. Whalen, a former employee of Roanoke County, Virginia, appeals a judgment notwithstanding the verdict entered by the district court after a jury awarded him compensatory and punitive damages against William F. Clark, the county executive, for a retaliatory discharge. We reverse the judgment notwithstanding the verdict because, contrary to the district court, we conclude that the evidence of causation warrants denial of Clark's motion for judgment. We remand the case for reconsideration of Clark's motion for a new trial.

I

Whalen appeared before the State Corporation Commission in March, 1976, to oppose the Appalachian Power Company's proposal to build power lines through Floyd County, where he resided. When asked his occupation, he stated that he was employed by Roanoke County as an engineer.

Whalen testified that the morning after his Commission appearance Clark fired him for testifying against the Appalachian Power Company. According to Whalen, the county attorney was present and quickly advised Clark not to fire Whalen; Clark recanted on the condition that Whalen withdraw his testimony.

The county attorney testified that he could not remember being at the meeting

and that normally he did not participate in such matters. Clark said that he simply cautioned Whalen to make clear in testifying that his views were his own, not those of Roanoke County. Clark testified that this was the only time he discussed power company matters with Whalen.

Whalen again opposed Appalachian Power as a private citizen at a Commission hearing in 1977 after obtaining permission from his supervisor, County Engineer Arthur Guepe. According to Whalen, Clark reacted by refusing to speak with him in social settings and by questioning his work more often than usual, sometimes bypassing Guepe in doing so. Clark, by contrast, testified that he knew nothing of Whalen's second testimony.

In March, 1979, Clark fired Whalen because of his business relationship with a Roanoke real estate broker. Clark claimed that Whalen's status as a real estate agent registered in Roanoke under the broker conflicted with his official responsibilities to review Roanoke subdivision developments. Clark testified that when he first learned that Whalen was pursuing a real estate license, he understood that Whalen would conduct business in Floyd County alone. Guepe recalled a similar understanding. According to Clark, Whalen explained that he needed to be apprenticed with the Roanoke broker because he could not fulfill the real estate licensing requirement in Floyd County. Clark accepted Whalen's explanation and his pledge not to appear publicly as a Roanoke real estate agent to avoid an appearance of impropriety. Only later, Clark claimed, did he learn of Whalen's involvement in Roanoke County land transactions.

Whalen's real estate activities elicited complaints from other Roanoke brokers, prompting Clark to send a letter to Whalen on January 30, 1979, that set out the purported earlier agreement and demanded Whalen to choose between a career in Roanoke real estate and continued employment with the county. Whalen wrote "I concur" on the letter. Clark testified that after he learned that Whalen had received a commission from a transaction concerning property in the county, he discharged him.

Whalen contradicted Clark's account of the events surrounding this discharge. According to Whalen, his original understanding with Clark in mid-1978 was that he was not to deal in subdivided lots in Roanoke County. Whalen claims that even though he never breached this agreement, he decided to curtail his real estate activities altogether after Clark expressed his anger at seeing Whalen's name in an advertisement of the Roanoke broker's properties. Whalen explained to Clark that he would give up his license as soon as he settled a fee dispute concerning the sale that eventually was the subejct of Clark's January 30, 1979, letter. He kept Clark apprised of the last transaction, finally receiving a fee in mid-January, 1979. He then gave up his real estate license to avoid the appearance of a conflict of interest.

Whalen grieved the firing. The grievance panel decided to reinstate him but kept Clark's letter in Whalen's file. Whalen resumed his employment with the county on June 19, 1979.

Two hours after Whalen returned to work, Clark fired him again, citing his "failure to properly discharge [his] responsibilities on behalf of Roanoke County." According to Clark, Whalen improperly reduced a subdivision performance bond for property being developed by the Roanoke broker with whom Whalen had been associated. Clark claims he was informed of the bond problem by the new County Engineer, Raymond Robertson, some time after Whalen's grievance hearing. He directed Robertson to contact Guepe, Whalen's former supervisor, to make sure the bond was unauthorized, because only the County Engineer had the authority to release security. Clark never confronted Whalen directly, testifying instead that he felt convinced contact with Guepe had been made. Robertson could not recall contacting Guepe, noting only that he felt contact was made.

Documents before the jury established that the broker wrote Whalen on November 29, 1978, to seek release of over $32,-

000 held in a $40,000 letter of credit for the subdivision. Whalen responded on December 4, 1978, by partially denying the request, citing the amounts of security needed to ensure proper drainage, paving, and erosion control. Whalen's letter, which was checked by Guepe, released $24,000 in all.

Robertson testified that he was upset by Whalen's release in light of the condition of the subdivision's roads. Robertson considered partial releases of security to be an unwise policy. Even if a contractor met individual obligations that were assigned particular values during the calculation of the bond, Robertson preferred to hold all security until the whole job was done.

Whalen testified that Guepe, by contrast, had a policy of making partial releases upon a showing of performance. Whalen claimed that the letter to the broker was consistent with this policy and that Guepe fully approved the letter before he sent it.

Guepe testified that he supervised bond reductions during his tenure as County Engineer. He affirmed that Whalen's reduction letter appeared to be normal and customary. Although Guepe had checked the letter, he had no recollection of this particular bond reduction.

## II

Whalen had the burden of proving that his testimony before the Commission was a substantial or motivating factor in Clark's decision to fire him. Even if Whalen carried this burden, Clark could have escaped liability by demonstrating that he would have reached the same decision regardless of the protected conduct. *See Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 285–87, 97 S.Ct. 568, 575–76, 50 L.Ed.2d 471 (1977).*

The question to be resolved in deciding a motion for judgment notwithstanding the verdict is whether there is evidence upon which a jury can properly find a verdict. *Ralston Purina Co. v. Edmunds,* 241 F.2d 164, 167 (4th Cir.1957). The principles governing decision of the motion have been stated as follows:

In determining whether the evidence is sufficient the court is not free to weigh the evidence or to pass on the credibility of witnesses or to substitute its judgment of the facts for that of the jury. Instead it must view the evidence most favorably to the party against whom the motion is made and give that party the benefit of all reasonable inferences from the evidence.

9 Wright & Miller, *Federal Practice and Procedure* § 2524 at 543–45 (1971); *accord Abasiekong v. City of Shelby,* 744 F.2d 1055, 1059 (4th Cir.1984). A mere scintilla of evidence is insufficient to sustain the verdict. *Improvement Company v. Munson,* 81 U.S. (14 Wall.) 442, 448, 20 L.Ed. 867 (1871). Similarly, when a jury is called upon to determine causation, the inferences it draws to reach its verdict must be reasonably probable; mere speculation is insufficient. *Lovelace v. Sherwin-Williams Co.,* 681 F.2d 230, 241–42 (4th Cir.1982).

Tested by the principles governing motions for judgment notwithstanding the

* The district court properly instructed the jury, which returned the following special verdict:
(1) Has the Complainant, Richard A. Whalen, established by a preponderance of the evidence in this case that his testimony before the State Corporation Commission was a substantial or motivating factor in the decision of the Defendant, William F. Whalen, to terminate Complainant Whalen's employment with Roanoke County on June 19, 1979?
Answer yes
(2) If your answer to question (1) is yes, has the Defendant Clark established by a preponderance of the evidence in this case that he would have reached the same decision to terminate Complainant Whalen's employment with Roanoke County on June 19, 1979, even if Complainant Whalen had not appeared before the State Corporation Commission?
Answer no
(3) If your answer to question (1) is yes and your answer to question (2) is no, do you find from a preponderance of the evidence that the Defendant, William F. Clark, acted maliciously, in bad faith, or in utter or reckless disregard of the Complainant Whalen's rights in his effort to terminate Mr. Whalen's employment with Roanoke County?
Answer yes

verdict and claims of first amendment, mixed motive retaliation, the evidence was sufficient to defeat the motion. The testimony Whalen gave before the State Corporation Commission regarding the location of a power line in Floyd County concerned a matter of public interest sufficiently important for the Commission to convene a public hearing. Whalen's right to comment on a matter of public concern outweighs Roanoke County's interest in promoting the efficiency of public service. The record discloses that Roanoke County had no interest in the location of the power line in Floyd County. Roanoke County does have an interest in assuring that its employees do not undertake to represent the county without authority. The evidence, however, does not establish that Whalen misrepresented the capacity in which he appeared before the Commission. In answer to a question from the official conducting the hearing about his occupation, he responded truthfully that he was an engineer employed by Roanoke County. He did not represent that he spoke on behalf of the county, nor does it appear that the Commission gained that impression. Consequently, Whalen's testimony before the Commission was protected by the first amendment. *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983).

▆ We cannot accept Clark's argument that the judgment notwithstanding the verdict was justified because the evidence was insufficient to show causation. Whalen was obliged to establish causation by proving that his testimony before the Commission was a substantial or motivating factor in Clark's decision to fire him. We cannot question Whalen's credibility when reviewing the grant of the motion.

Most importantly, the evidence showed that Clark actually undertook to fire Whalen because of his testimony at the Commission hearing. Indeed, Clark would have fired Whalen had not the county attorney advised against it.

The evidence also discloses that after unsuccessfully attempting to fire Whalen because of his testimony, Clark fired him for reasons deemed unacceptable by a neutral grievance committee. Two hours after Whalen was reinstated, Clark summarily fired him ostensibly for a reason that Clark had known about for some time. The evidence does not disclose that Clark was hostile to Whalen before Whalen testified at the Commission's hearing.

Also, we must reject Clark's argument that the evidence compels acceptance of his testimony that he fired Whalen for a legitimate reason. Clark's defense rested largely on his credibility, which the jury obviously did not accept. In addition to rejecting proof of his motive for firing Whalen, the jury found he acted maliciously, in bad faith, or in reckless disregard of Whalen's rights.

Clark emphasizes that because three years elapsed between Whalen's testimony and his ultimate discharge and because there were intervening events, there is no basis on which the jury could infer a retaliatory motive. This argument, however, overlooks Clark's attempt to fire Whalen immediately after Whalen testified in opposition to Appalachian's proposal. The three-year interval was simply a factor for the jury to take into consideration in weighing the evidence. It does not compel reversal as a matter of law.

Clark's reliance on *Burrus v. United Telephone Company of Kansas, Inc.,* 683 F.2d 339 (10th Cir.1982), is misplaced. In *Burrus* the court upheld factual findings that an employee terminated with the rest of her department three years after filing an EEOC charge had failed to establish causation for purposes of her Title VII retaliation claim. *Burrus* sustained as not clearly erroneous a reasonable inference drawn from facts that are quite different from this case except for the three-year interval. It does not hold that a three-year interval between protected activity and discharge bars a retaliation claim as a matter of law.

▆ In this case, the issue of causation depends on Clark's motive for firing Whalen. Determination of motive is a function

peculiarly within the province of the fact finder, because so much depends on the opportunity to appraise the antagonists as they testify. A finding of motive should not be set aside by the reviewing court unless the evidence clearly compels rejection. *See Aluminum Company of America,* 148 F.2d 416, 433 (2d Cir.1945); [Interim Binder] *Federal Procedure,* L.Ed. § 77:266 (1981). Testing the jury's findings within the narrow confines of a motion for judgment notwithstanding the verdict, we conclude that the evidence is sufficient to defeat the motion.

### III

The district court conditionally denied Clark's motion for a new trial. It ruled that there was "no error in the conduct of the original trial, hence, a new trial would not be warranted in the event Mr. Whalen successfully appeals [the judgment notwithstanding the verdict]."

■ There is a significant difference between deciding a motion for judgment notwithstanding the verdict and deciding a motion for a new trial. The trial court is prohibited from assessing the credibility of witnesses and weighing the evidence when ruling on a motion for judgment notwithstanding the verdict.

■ In contrast, the trial court can weigh evidence and assess credibility in deciding whether to grant a new trial. *Wyatt v. Interstate & Ocean Transport Co.,* 623 F.2d 888, 891–92 (4th Cir.1980). The court should exercise its discretion to grant a new trial "whenever, in its judgment, this action is required in order to prevent injustice." 11 Wright & Miller, *Federal Practice and Procedure* § 2805 at 38 (1973). This includes ordering a new trial when the jury verdict is contrary to the weight of evidence.

■ Here the district court denied the motion for a new trial because it perceived no error in the conduct of the trial. But ruling on the conduct of the trial did not exhaust the district court's function. It should have gone on to decide whether the

verdict was contrary to the weight of the evidence by making its own assessment of the credibility of the witnesses and the weight of the evidence. *See Wyatt,* 623 F.2d at 891–92; 11 Wright & Miller, *Federal Practice and Procedure* §§ 2806, 2807, and 2815 (1973).

Accordingly, we reverse the judgment notwithstanding the verdict and vacate the order denying a new trial. On remand the district court should reconsider the motion for a new trial under proper standards. Regardless of the absence of error in the conduct of the trial, it should grant a new trial or set a remittitur if it concludes that an injustice has been done because the verdict is contrary to the weight of the evidence; otherwise, it should enter judgment on the verdict. Whalen having substantially prevailed shall recover his costs.

ERVIN, Circuit Judge, concurring in part and dissenting in part:

### I.

I am unable to agree with the decision of the majority that the district court erred when it granted Clark's motion for judgment notwithstanding the verdict in this case. For that reason, I respectfully dissent from that portion of the opinion.

I accept the majority's view that when Whalen appeared as a witness before the Virginia State Corporation Commission in March 1976 and opposed Appalachian Power Company's (APCO) plan to erect electric transmission lines in Floyd County, Whalen's testimony was protected by the first amendment because it related to a matter of public interest. *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). Furthermore, the jury's specific finding that this testimony was a substantial or motivating factor in Clark's decision to fire Whalen on June 19, 1979, cannot be disregarded or ignored.

In spite of this evidence, I believe that the district court correctly granted Clark's motion for judgment. It is clear that in this circuit the standard for granting a motion for judgment notwithstanding the

verdict under Fed.R.Civ.P. 50(b) is the same as that for allowing a motion for a directed verdict. *Hawkins v. Sims,* 137 F.2d 66, 67 (4th Cir.1943). A directed verdict should be granted if, after viewing the evidence in the light most favorable to the nonmoving party, and resolving all conflicts in that party's favor, the court finds that the verdict is not supported by substantial evidence. *Id.* at 67; *accord Gairola v. Commonwealth of Virginia Department of General Services,* 753 F.2d 1281, 1285 (4th Cir.1985); *Aetna Casualty & Surety Co. v. Yeatts,* 122 F.2d 350 (4th Cir.1941). We have further refined this test by holding that "an issue can only be [properly] submitted to the jury when it is supported by 'evidence which shows a "probability" and not a mere "possibility"'" of proof. *Mayberry v. Dees,* 663 F.2d 502, 510 (4th Cir.1981) (quoting *Ralston Purina Co. v. Edmunds,* 241 F.2d 164, 168 (4th Cir.), *cert. denied,* 353 U.S. 974, 77 S.Ct. 1059, 1 L.Ed.2d 1136 (1957)). The court is required to grant a directed verdict (or a JNOV) even if there is some evidence supporting the opposite position so long as " 'there are no controverted issues of fact upon which reasonable minds could differ.' " *Kim v. Coppin State College,* 662 F.2d 1055, 1059 (4th Cir.1981) (quoting *Proctor & Colonial Refrigerated Transportation, Inc,* 494 F.2d 89, 93 (4th Cir. 1974)).

That the district court understood and applied the proper legal standard is made apparent from the following portion of its ultimate ruling:

> The record shows a mere *possibility* that Clark terminated him [Whalen] in 1979 in retaliation for exercising his first amendment rights in 1976.

(emphasis added). (JA 514).

The majority opinion, in the main, faithfully discusses the events which transpired between 1976, when Whalen first appeared before the Corporation Commission, and June 19, 1979, when the firing about which we are concerned took place. For that reason, it would serve no purpose for me to repeat them here. I do, however, think that insufficient emphasis was given to the fact that three and one-half years elapsed between Whalen's speech and his discharge, and that Whalen had no dealings with the Corporation Commission after 1977, when he made his second and last appearance as a witness before that body.

If we had nothing except Whalen's two public appearances as a witness, the abortive discharge the day following the initial appearance, Clark's admission that he was contacted by a power company employee about Whalen's activities,[1] Whalen's failure to receive some merit raises despite satisfactory and above average job performance ratings, followed by the June 19, 1979 termination, these bare facts *might* have risen to the level of "probability" required under *Mayberry,* although to say so would require, I believe, that Clark possess a memory that even an elephant would envy and a dogged spirit that would do credit to Victor Hugo's indefatigable detective, Javert.

But these facts, as the majority admits, are by no means all that we have. We have, as previously noted, an employee who received the two highest job performance ratings over a three and one-half year period while his supposedly vindictive superior was alleged to be "out to get him." We also have a lengthy confrontation between Whalen and his employer resulting from Whalen's unilateral decision to establish himself as a real estate agent. This new career began in January 1978 and triggered a running controversy that continued unabated until his discharge eighteen months later.[2] Although Whalen initially

---

1. The only evidence of this comes from Clark's own lips and indicates a chance and understandable social or civic club encounter, possibly prompted by natural curiosity on the part of the APCO employee, rather than a sinister threat or an official complaint. (JA 340).

2. A number of meetings involving Clark, Whalen and other employees of Roanoke County were held in an effort to resolve these problems. Whalen recalls a June 1978 gathering at which Clark first denied Whalen permission to sell or to have a real estate license and then modified his limitation to prohibit sales in Roanoke

implied that his ambitions would be limited to Floyd County, he soon established a working relationship with Rudy Cox, a Roanoke County real estate agent, who was heavily involved in the development of subdivisions.

Not surprisingly, considering that Whalen, as a civil engineer, was employed by Roanoke County to review subdivision developments, this association with Cox produced complaints by competing realtors to the press, to Clark, and to the Board of Supervisors of Roanoke County, charges of misuse of county vehicles and county time by Whalen, monthly objections by subdivision developers concerning Whalen's recommendations and decisions, and a not unexpected adverse reaction from Clark when Whalen's name appeared in a publication of the Roanoke Valley Realtors as an agent of Rudy Cox. Finally, after Whalen was involved in a questionable decision to reduce a subdivision bond favorable to Rudy Cox, Whalen was discharged.

Whalen, in his own testimony, recognized that there were problems as a result of his dual role. He stated that the firing overturned by the grievance panel was for "a conflict of interest" (JA 170), or a possibility of a conflict of interest stemming from a county engineer having a real estate license. He conceded that he could understand how people might misconstrue his relationship with developers because of the "possibility of [his] granting subdivision approval and turning around and selling subdivided lots." (JA 191).[3]

In addition to being sensitive to the way his actions might be perceived, Whalen went further and confessed that his relationship with Clark deteriorated due to his real estate activities when he said: "The straw that broke the camel's back in our relationship was a letter that Mr. Clark had received showing my name on a multiple listing page of the Roanoke Valley Realtors." (JA 148). At trial, when queried about why he was fired in March of 1979, Whalen said, "No, I could not see any reason other than the first case against me with Rudy Cox." (JA 435).

In addition to the overwhelming evidence of the problems produced by Whalen's real estate activities, I am also influenced by the absence of any proof that Clark ever discussed Whalen's Corporation Commission appearance after 1976, or that Appalachian Power Company either conspired with Clark or exerted any pressure upon

County. According to Whalen, a compromise was finally reached forbidding the sale by Whalen of subdivided lots or houses in Roanoke County. (JA 150). In late October or November 1978, there was another similar discussion after Clark saw a listing by Rudy Cox Realtors showing Whalen as one of Cox's agents. After these meetings, Clark wrote a letter to Whalen dated January 30, 1979, in which Clark recounted some of the history of the case and then stated in part:

> We understood that you made the clear and unequivocal commitment that you would engage in no real estate activities in Roanoke County...
>
> Now it is brought to my attention that you are in some manner involved in a disagreement with other Roanoke County real estate agents over commissions or other fees related to a sales transaction on property in Roanoke County. *I believe it necessary to ask you to promptly decide if you wish to pursue a career in real estate or continue employment with Roanoke County.*
>
> Your job clearly places you in a position requiring the utmost in public confidence and trust. Working with developers and property owners your decisions in regard to review and approval of plans can expedite or hinder their progress and thus their livelihood. *The County government must not be placed in a position of employing or retaining an employee whose personal affairs present any suspicion that preferential treatment is given to some persons.* If you in any way deal in real estate in Roanoke County this cannot help but create feelings of unfair advantage from other persons also engaged in this same field who must come to you for approval of their proposals.
>
> Please consider this matter seriously and promptly in order that we can reach a mutually agreeable conclusion.

(emphasis added) (JA 443–4).

Below the signature of Clark there appears the entry "I concur with the above," followed by Whalen's signature. (JA 444). In his testimony, Whalen admits that he signed this letter. (JA 192–93).

3. At least one of the tracts sold by Whalen in Roanoke County was suitable for a subdivision. (JA 429).

him. In sum, I agree with the district court that there was no more than a mere remote possibility that Whalen's 1979 discharge resulted from Whalen's 1976 speech, and that JNOV was therefore proper.

Furthermore, even if Whalen's 1976 exercise of free speech was a "substantial" or "motivating" factor in the 1979 discharge, Whalen is still not entitled to prevail. Taking a discharge motivated by an exercise of first amendment rights as a given, the court must then determine whether the employer has shown that the discharge would have occurred regardless of the protected conduct. *Jones v. Dodson,* 727 F.2d 1329, 1335 (4th Cir.1984); *Neal v. Howell,* 689 F.2d 473, 476 (4th Cir.1982). In this regard I also agree with the district court's conclusion:

> The reasons given for plaintiff's [Whalen's] discharge were totally unrelated to his testimony against APCO's planned construction and that plaintiff failed to show the bond reduction issue was a mere sham or subterfuge.

(JA 514). Hence, I am convinced, as was the district court, that the 1979 "discharge would have been made in any event for reasons unrelated to any exercise of protected first amendment rights." *Jones,* 727 F.2d at 1335 (citing *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)). Therefore, the grant of JNOV was appropriate regardless of the ability of Whalen to make out a prima facie case of retaliatory discharge in violation of his first amendment rights.

## II.

If, however, the majority is correct in holding that the district court erred in granting Clark's JNOV motion, then I am convinced that under the facts of this case the order denying a new trial should be vacated and the matter should be remanded to the district court so that the new trial motion can be reconsidered under the proper standard. Therefore, I concur in Part III of the majority opinion.