**EKA AB, CONTEKA B.V., Dr. P. Kenerick Maher and Dr. A.P. Bolton,**

v.

**UNION CARBIDE CORPORATION**

**and**

**Katalistiks International, Inc.**

**Civ. No. S 86–2904.**

United States District Court, D. Maryland.

Nov. 18, 1988.

Wayne A. Cross, Liza A. Bosworth, Karen J. Pordum, Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City, Gary C. Duvall, Kenneth F. Spence, III, Miles & Stockbridge, Towson, Md., for plaintiffs.

James E. Gray, Richard M. Barnes, Goodell, Devries, Leech & Gray, Baltimore, Md., for defendants.

SMALKIN, District Judge.

## MEMORANDUM

After a six week trial that resulted in directed verdicts against the plaintiffs on their antitrust claims and a jury verdict in favor of the plaintiffs/counterdefendants on all but one of eleven counterclaims, this matter is now before the Court on the defendants/counterplaintiffs' motion for new trial on their counterclaims of misappropriation of trade secrets, tortious interference with contract, and breach of an employee's service agreement. The Court has read and considered the motion and determines that it may be summarily denied.

In deciding the motion, the Court has weighed the evidence and assessed credibility, as taught by *Whalen v. Roanoke County Board of Supervisors,* 769 F.2d 221, 226 (4th Cir.1985), *aff'd en banc,* 797 F.2d 170 (1986). The Court will address the motion's points *seriatim.*

First, the defendants/counterplaintiffs attack the Court's trial time restrictions as having unfairly prejudiced them in the prosecution of their counterclaims. Although counsel had previously told the Court that two to three, or perhaps four, weeks of trial time would be adequate, the time limitation imposed at the pretrial conference (50 hours of evidence presentation

per side) allowed for a five to six week trial. It was out of an abundance of caution that the Court allocated the parties enough time to allow for a five to six week trial, conducted at a sensible pace. The defendants/counterplaintiffs now claim that this allocation of time was unfair, because, since the plaintiffs' declaratory judgment * and anti-trust claims did not reach the jury, the defendants wasted time defending those claims, time which they might otherwise have spent prosecuting their own counterclaims.

The plain fact is that the defendants had plenty of time both to present their defenses on the plaintiffs' claims and to prosecute their counterclaims. What defendants do not acknowledge in their motion for new trial is the fact that much of the evidence presented by the *plaintiffs* in their case in chief was relevant to, and overlapped, plaintiffs' defense of the counterclaims, given that the factual issues concerning both the negotiation of the Katalistiks purchase agreement and the trade secrets, the two factual wellsprings of the counterclaims, were almost as crucial to plaintiffs' claims in chief as to the counterclaims. Plaintiffs put on very little evidence in separate defense of the counterclaims. Defendants also fail to point out that their cross-examination of the plaintiffs' witnesses was as often directed to the counterclaims as to the claims in chief. Because the plaintiffs in presenting evidence on their claims in chief were seeking to prove that they were *not* utilizing proprietary Union Carbide or Katalistiks technology, there was a substantial identity of issues between the claims in chief and the counterclaims. Therefore, a 50/50 division of trial time was perfectly fair and adequate. Furthermore, the Court cannot recall any objection having been raised to the time limitations or allocations when they were made at the pretrial conference, not at any time in the course of trial, until defendants had (or had very nearly) exhausted their alloted time, at which point they requested, and the Court granted, a short extension.

It is true that, in closing argument, plaintiffs' counsel pointed out that defendants had not called certain fact witnesses. But these comments, fairly read, go not to the number of witnesses called, but to the lack of relevant evidence in their testimony as compared to what the jury could have expected to have heard from other Union Carbide witnesses. These other witnesses, it could be argued according to other evidence in the case, had much more *direct* knowledge of relevant facts than some of those called by Union Carbide at trial. In argument, plaintiffs' counsel did not unfairly seize upon any defect in the defendants' case caused by a shortage of time; rather, he criticized the defendants' choice of witnesses. In hindsight, of course, now having lost on the counterclaims, defendants contend they would have called the mentioned witnesses, if only they had had enough time to do so. The Court is not persuaded by this *post hoc* argument.

With further reference to the allocation of trial time, the Court incorporates herein its Statement for the Record made in open court and attached as an appendix to this memorandum opinion. In retrospect, the Court is convinced that not only were the relatively few determinative factual issues in this case thoroughly and fairly aired in the time allotted, they were asphyxiated under mounds of documents and weeks of testimony. Judging from the jurors' expressions (closely monitored by the Court as the case wore on), they viewed the termination of the case as an almost providential deliverance from slow torture. The Court was, and remains, convinced of the fairness of its time limits and allocations.

Defendants allege that there was an error in the Court's instructions on misappropriation of trade secrets, in that the word *actually* preceded the phrase "used in one's business" in defining trade secrets in one of the Court's several instructions on trade secrets. The defendants do not deny that the phrase "used in one's business" appears in the Maryland cases defining the concept of trade secret. *See Space Aero v. Darling*, 238 Md. 93, 105, 208 A.2d

---

* The plaintiffs' declaratory judgment claims were mooted at the conclusion of their case in chief.

74 (1965). Rather, they rely on a Seventh Circuit case, applying Illinois law, for the contention that there is no "actual use" requirement for trade secrets sought to be protected from misappropriation. *Syntex Ophthalmics, Inc. v. Tsuetaki,* 701 F.2d 677, 683 (7th Cir.1983). The Court is not persuaded from *Syntex* that its instructions were in error. *Syntex* does not apply Maryland law. Under *Space Aero,* use of an idea in business is an element of trade secret protection, and adding the word *actually* does not fatally taint the definition given the jury. Furthermore, *Syntex* reviewed injunctive relief, not jury instructions. Here, the Court's trade secret instructions, taken as a whole, simply required the defendants to prove that there was a real, existing trade secret of value to them that was stolen by plaintiffs. The fact that Union Carbide had never commercialized some of the alleged secret technology was not made a determinative fact by the Court's instructions, but it was one that the jury certainly could consider, even under *Syntex,* in deciding whether that technology was of value and thus worthy of trade secret protection. The Court finds no prejudicial error inherent in the word *actually* as used in Instruction No. 36.

■ With regard to the Court's refusal to submit the issue of Bolton's, Maher's, and Conteka's tortious interference with contract to the jury, the Court holds, first, that there was no error, because defense counsel, who pressed a multiplicity of counterclaims, failed to call this buried allegation to the Court's attention until it was effectively too late to do anything about it, all counsel having agreed upon the verdict sheet well beforehand. Even if the Court erred in this regard, the error was harmless in view of the complete lack of credible evidence supporting a claim of tortious interference with economic advantage. The evidence was overwhelming that Union Carbide had no intention of maintaining an ongoing economic relationship with Shell, its arch rival in the hydrocracking field, and that it would only grudgingly fulfill the contract for ultrastable Type–Y zeolite (USY) it had inherited when it purchased Katalistiks. Given these facts, together with the fact that the existing "contract" obligated Shell to purchase nothing, but merely to pay for what it unilaterally decided to order and accept, there was no viable claim of tortious interference made out against any defendant. In fact, had the jury decided this counterclaim against EKA, entry of judgment N.O.V. thereon would have been appropriate.

■ Finally, the Court is of the opinion that the jury's verdict on the misappropriation counterclaims was not against the clear weight of the evidence. In their memorandum supporting the new trial motion, defendants/counterplaintiffs spend 27 pages of written argument re-visiting the evidence and trying to convince the Court of the strength of their case, of which they could not convince the jury after a six week trial. Taking into account the credibility of the witnesses and the weight to be given all the evidence, the Court cannot say that the jury's verdict was against the clear weight of the evidence. There were serious and genuine disputes of fact as to whether the processes in question: were in fact proprietary to Union Carbide and/or Katalistiks or were in the public domain; were in fact sufficiently novel as to warrant protection; were in fact misappropriated; and were in fact of sufficient commercial value to warrant an award of damages. Additionally, it was hotly disputed by reputable scientists whether the counterdefendants did in fact utilize, in their production of USY, the processes that defendants/counterplaintiffs claimed were misappropriated. Although there was circumstantial evidence, as well as some direct evidence, to support the counterclaims in this regard, there was also a significant body of credible evidence *contra.* Indeed, the only counterclaim on which the clear weight of the evidence favored defendants was the claim of Dr. Bolton's breach of fiduciary duty, and, on that claim, the jury found for the defendants and awarded damages. The jury decided the issues appropriately and in accordance with the Court's instructions, and no new trial will be awarded.

For the reasons stated, an order will be entered separately, denying the defendants/counterplaintiffs' motion for new trial.